JACKSON COUNTY PUBLIC WATER SUPPLY DISTRICT NO. I, Appellant,

v.

ONG AIRCRAFT CORPORATION, a corporation, City of Kansas City, Missouri, Ilus W. Davis, Successor to H. Roe Bartle, Mayor of Kansas City, Missouri, Hugh G. Carr, Director of Water, Kansas City, Missouri, and Earl Brosnahan, Respondents.

No. 50495.

Supreme Court of Missouri,

Division No. 2.

April 12, 1965.

Charles W. Hess, Lynn C. Hoover, Terrell, Hess, Van Osdol & Magruder, Kansas City, and Henry Andrae, Hendren & Andrae, Jefferson City, for appellant.

John L. Gaylord, Neil F. Cline, Kansas City, for respondent Ong Aircraft Corp.

Herbert C. Hoffman, City Counselor, Ned Bahr, Asst. City Counselor, Kansas City, for respondents Kansas City, Ilus W. Davis, successor to H. Roe Bartle, Mayor of Kansas City, Mo., and Hugh G. Carr, Director of Water, Kansas City, Mo.

Edward F. Aylward, Kansas City, for Earl Brosnahan Co.

STORCKMAN, Presiding Judge.

This is a suit to enjoin the defendants from constructing and using water supply lines in a subdivision being developed in Jackson County. The plaintiff is a public water supply district organized pursuant to §§ 247.010–247.220, RSMo 1959, V.A.M.S., and as such is designated a political corporation of the State of Missouri. The defendant Ong Aircraft Corporation is the promotor and developer of the subdivision; the defendant Earl Brosnahan is the general contractor building the subdivision for Ong Corporation. The City of Kansas City, its mayor, and director of water are the other defendants. The plaintiff claims that it has the exclusive right to supply water to that portion of the new subdivision which is within the boundaries of the water supply district. The court made findings of fact and conclusions of law and entered judgment denying a permanent injunction against the defendants. The plaintiff has appealed.

At the outset we are confronted with an attack upon our jurisdiction. The appellant's contention that this court has jurisdiction of the appeal is based solely on the ground that the amount in dispute, exclusive of costs, exceeds $15,000. Art. 5, § 3, Constitution of Missouri, 1945, V.A.M.S.; § 477.040, RSMo 1959, V.A.M.S. The appellant concedes that it does not seek a money judgment but relies on Ingle v. City of Fulton, Mo., 260 S.W.2d 666, 668, which states the rule that the amount in dispute must be determined by the value in money of the relief to plaintiff, or loss to the defendant, should the relief be granted, or, vice versa, should the relief be denied.

The appellant's jurisdictional statement in substance is that the prayer of its petition seeks to enjoin the respondent City of Kansas City from supplying water to a subdivision of homes, known as Crossgates, which is in process of development with 177 lots platted within the territory of the appellant, that the average cost of water supply to appellant's residential customers is five dollars per month, and, therefore, in one year's time "after complete development of the subdivision", the appellant's loss or gain, depending on the outcome of the lawsuit, would be in excess of $10,000 per year, and that the "supply of water will extend over many years' time, and at least until Appellant's present water supply contract expires in 1981." This expiration date is taken from plaintiff's exhibit 1 which is a contract between the plaintiff Water Supply District and the defendant City of Kansas City, dated July 7, 1961, evidencing the terms and means by which the District sold and conveyed to the City all its facilities and property located within a part of its service area annexed by the City in 1961 and an additional part an-

nexed effective in 1963. The exhibit at page 10 states that the City agrees to sell to the District and the District agrees to buy from the City the District's entire water supply for a period of 20 years from the day on which a certain part of the contract is performed.

No monetary amount is directly involved in this case. It is strictly a suit for injunctive relief. The petition states that the plaintiff will suffer irreparable damage and that "it will be practically impossible to ascertain with any degree of certainty the damages sustained by plaintiff because of said unlawful construction." The prayer is for an injunction to restrain and enjoin the defendants from constructing and using the proposed water supply lines.

The evidence bearing on the question of jurisdiction tends to show that by reason of the extension of the city limits of Kansas City large portions of the District's original service area have been detached and turned over to the City. The most recent detachment occurred pursuant to the contract of July 7, 1961, between the District and the City and a decree of the Circuit Court of Jackson County validating such action as provided by law. The final annexation and detachment established a boundary line generally along 119th Street which is the southern boundary of Kansas City and the northern limits of the City of Grandview. Ong Aircraft Corporation is the owner of an 80-acre tract of land that lies approximately one-half on each side of the 119th Street dividing line. This tract, known as Crossgates, has been subdivided into 372 building lots of which 195 are north of the boundary line in Kansas City and 177 are south of the line in the City of Grandview. The 195 lots located in Kansas City are not involved in this controversy. The 177 lots in Grandview are within the geographical area assigned to the plaintiff Water Supply District.

On October 18, 1962, a contract was entered into between Ong Corporation and Kansas City by the terms of which Kansas City agrees to supply water to the 177 lots located in Grandview through mains to be provided by Ong Corporation but which will eventually become the property of the City. On December 6, 1962, the plaintiff filed its injunction suit. On this appeal the Water Supply District claims the exclusive right to supply water to the Grandview portion of the subdivision by virtue of the contract with Kansas City dated July 7, 1961, and also pursuant to the provisions of Chapter 247, RSMo 1959, under which the District is organized. The District further contends that the right of Kansas City to supply water beyond its corporate boundaries is conditioned upon a compliance with § 386.250(7), RSMo 1959, and that the City has failed to comply with that statute.

█ The case of Ingle v. City of Fulton, Mo., 260 S.W.2d 666, relied on by plaintiff, was an action to restrain the defendant City from enforcing an ordinance prohibiting mining within the city limits of Fulton. The petition alleged that the plaintiff's land located within the limits of the City contained fireclay of the reasonable value of $35,000. The plaintiff proposed to lease the land for the purpose of mining the clay for which he was to be paid in royalties. There was no showing in the record that the plaintiff would receive royalties in excess of the amount required to vest jurisdiction of the appeal in the supreme court. This court held that it was not the gross value of the fireclay on the land that controlled but the net value that the plaintiff would receive from the mining operation. The supreme court held it did not have jurisdiction and transferred the appeal to the Kansas City Court of Appeals. It is well recognized that it is the net value involved and not the gross amount that must be used in determining the monetary jurisdiction of this court. Powers v. Johnson, Mo., 302 S.W.2d 899, 901[1].

█ For the supreme court to have appellate jurisdiction because of the amount in dispute, the record must affirmatively show with certainty that the amount in dispute, regardless of all contingencies, exceeds $15,-

000, and this court will not indulge in speculation and conjecture as to the amount in dispute or the value of the relief sought in order to bring a case within its limited appellate jurisdiction. State ex rel. Missouri-Kansas-Texas R. Co. v. The Public Service Commission of Missouri, Mo., 378 S.W.2d 459, 464[2]; Long v. Norwood Hills Corporation, Mo., 360 S.W.2d 593, 596[3]; Johnson v. Duensing, Mo., 332 S.W.2d 950, 953 [4-11]; Hogue v. Wurdack, Mo., 292 S.W. 2d 576, 577[2]; Cotton v. Iowa Mutual Liability Ins. Co., 363 Mo. 400, 251 S.W.2d 246, 249[3-4]; Yacobian v. J. D. Carson Company, Mo.App., 205 S.W.2d 921, 922[1]. In Emerson Electric Mfg. Co. v. City of Ferguson, Mo., 359 S.W.2d 225, 228[2], this court held that the minimum jurisdictional amount must be affirmatively established by the record and the amount in dispute is not what may be affected by the result of the case but what is directly involved in the suit. This entire matter is the subject of an excellent and exhaustive treatise entitled, "Missouri Appellate Jurisdiction", in the December 1964 Issue of the Washington University Law Quarterly. Chapter Nine, pages 618-709, of the symposium deals with the "amount in dispute" as a ground of appellate jurisdiction.

■ Regardless of the outcome of this litigation, the value of the right to supply water to the disputed area would still be subject to numerous contingencies. The City of Grandview might obtain an adequate source of water and elect to supply the residents of the area pursuant to §§ 247.160 and 247.170, RSMo 1959, V.A.M.S., just as Kansas City did in the territory it annexed and detached from the District. At the time of the trial, only one house had been built in Crossgates and none had been sold. When and in what manner the development of the subdivision will be completed is problematical. Any loss of water rates is prospective; no loss has been suffered to date. Even if we could overlook these and other contingencies, the *net value* of the right to supply water to the maximum of 177 users has not been shown. The estimated average water rate of five dollars per month for each residential customer is gross and there is no evidence of what the net amount would be. We cannot indulge in conjecture or speculation that future events would all be favorable and the jurisdictional amount be achieved without ignoring well-established standards for the determination of appellate jurisdiction. In the course of its written argument discussing irreparable damage as a basis for equitable relief, the appellant states: "Of course, it is impossible to forecast with any degree of accuracy how many houses will be located within [the] District and how much water will be consumed within any given period." We are constrained to hold on the record before us that we do not have jurisdiction of the appeal. The waste of time and effort in deciding jurisdictional questions and the consequent delay in disposing of litigation on its merits is regrettable, but it cannot be avoided under existing constitutional provisions limiting the jurisdiction of the supreme court to specified categories of appeals.

The appeal is transferred to the Kansas City Court of Appeals.

All of the Judges concur.